# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

LEWIS ALAN CARLTON,                    )
                                       )
     Plaintiff,                       )
                                       )
v.                                     )          CV623-022
                                       )
CORE CIVIC, *et al.*,                  )
                                       )
     Defendants.                      )

## ORDER AND REPORT AND RECOMMENDATION

*Pro se* plaintiff Lewis Alan Carlton has filed this 42 U.S.C. § 1983 lawsuit alleging various unconstitutional conditions of his confinement. *See* doc. 13. The Court granted him leave to proceed *in forma pauperis*, doc. 6, and he has returned the required forms, *see* docs. 7 & 12. The Court, therefore, proceeds to screen his Amended Complaint pursuant to 28 U.S.C. § 1915A.[1]

---

[1] Because the Court applies Federal Rule of Civil Procedure 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), allegations in the Complaint are taken as true and construed in the light most favorable to the plaintiff. *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011). Conclusory allegations, however, fail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal).

The circumstances leading to the present suit began, Carlton alleges, in 2016. *See* doc. 13 at 7. After he was attacked by other inmates, he suffered an injury to his knee and was diagnosed with a tear of his anterior cruciate ligament ("ACL"). *Id.* He alleges that he was transferred to various prisons, and, finally, to Jenkins Correctional Institution in 2019. *Id.* at 7-8. At Jenkins, he filed several grievances concerning the failure to refer him for treatment for his injury, which were denied. *Id.* at 8. Significantly, however, he alleges that the requests were denied, in part, by a doctor at the prison, Defendant Marler. *Id.* He also alleges that Defendant Adams, the Warden, "refused to enforce the bottom bunk restriction issued by medical." *Id.* He was taken for examination by an orthopedist in March 2023. *Id.* That doctor, Defendant Gaines, examined Carlton and told him that his injury had healed. *Id.* at 8-9. Carlton, skeptical of the diagnosis, told Gaines that he intended to file a lawsuit against him. *Id.* at 9. Several days later "Warden Adams threatened [him] with segregation if [he] 'threatened' his staff with a lawsuit." *Id.* After he filed the instant suit, he was transferred to Central State Prison in Macon, Georgia. *Id.* He alleges

various unconstitutional conditions at Central State Prison, which, as explained below, are irrelevant to this suit. *Id.* at 9-10.

## I.   Allegations Implicating Confinement

Carlton includes allegations that characterize his incarceration as "false imprisonment." *See* doc. 13 at 10. He alleges that "three (3) independent courts . . . found [him] to be falsely imprisoned on a non-Ga [sic] offense: impersonating a public <u>employee</u>." *Id.* Among the cases he cites are two Georgia Supreme Court opinions, *Kennedy v. Carlton*, 757 S.E. 2d 46 (Ga. 2014) and *Ward v. Carlton*, 868 S.E. 2d 194 (Ga. 2022), and a Georgia Court of Appeals opinion, *Carlton v. State*, 846 S.E. 2d 175 (Ga. Ct. App. 2020). *See id.* It is unclear what part of those opinions Carlton contends amounts to a "finding" that he was "falsely imprisoned."

To the extent that Carlton seeks immediate or speedier release from custody by his references to the ongoing state proceedings, such relief is unavailable in this case. *See, e.g., Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005) ("[A] prisoner in state custody cannot use a § 1983 action to challenge the fact or duration of his confinement . . . . He must seek federal habeas corpus relief (or appropriate state relief) instead." (internal quotation marks and citations omitted)). Moreover, this Court

would not be the proper venue for any federal habeas relief.  Jurisdiction over federal habeas petitions from state prisoners lies either in the district of conviction or the district of confinement.   *See* 28 U.S.C. § 2241(d).  The Georgia Supreme Court's most recent order indicates that Carlton was convicted in Cobb County, in the Northern District of Georgia.  *See Ward*, 868 S.E. 2d at 195-96; *see also* 28 U.S.C. § 90(a)(2). His Complaint indicates that he is confined at Central State Prison, located in the Middle District of Georgia.  *See* doc. 13 at 3; *see also* 28 U.S.C. § 90(b)(2).  Thus, it appears that this Court could not grant habeas relief, even assuming that such a request were procedurally proper. Since Carlton does not request relief, but only "direction," doc. 13 at 10, no further action on his request is appropriate.

## II.    Conditions at Central State Prison

The Court previously noted that it was "unclear, at best, whether this Court is the proper venue for" Carlton's claims arising at Central State Prison.   Doc. 10 at 2.   Carlton's Amended Complaint repeats allegations implicating the conditions at Central State Prison.  Doc. 13 at 9-10.  He asserts, albeit vaguely, that this Court is a proper venue for those claims because he suffered them as an immediate result of the

4

alleged retaliatory transfer and because he "is the 'subject matter' and venue for this honorable Court should extend to [him] . . . ." *Id*. at 10. Carlton is incorrect.

Venue is determined, principally, by the location of the defendants or events giving rise to a claim. *See* 28 U.S.C. § 1391(b).  Central State Prison is located in Bibb County, Georgia.  Bibb County lies in the Middle District of Georgia.  *See* 28 U.S.C. § 90(b)(2).  None of the named defendants has any apparent connection to Central State Prison, with the possible exception of the Commissioner of the Georgia Department of Corrections, Tyron Oliver.  *See* doc. 13 at 2.  The only proper venue for Carlton's claims arising at Central State Prison, therefore, appears to be the Middle District of Georgia.  The Court might sever that claim and transfer it.  *See* 28 U.S.C. § 1406(a); Fed. R. Civ. P. 21.  Since there appears to be no procedural obstacle to Carlton's filing his claims in the Middle District, however, the Court should exercise its discretion and **DISMISS** those claims, without prejudice to his right to refile them in

the appropriate forum.[2]  *See, e.g., Brownsberger v. Nextera Energy, Inc.*, 436 F. App'x 953, 953 (11th Cir. 2011).

## III.  Medical Care Claims

The clear focus of Carlton's Amended Complaint is his allegation that the care he has received for the injury to his ACL is insufficient.  To offend the Eighth Amendment, a government official must display "deliberate indifference to the serious medical needs of prisoners . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  This requires that (1) the prisoner suffered a sufficiently serious medical need; (2) to which the defendants were deliberately indifferent; (3) resulting in an injury. *Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007).  Whether a serious medical need existed is an objective standard. *Milton v. Turner*, 445 F. App'x 159, 161-62 (11th Cir. 2011).  However, whether defendants

---

[2]  Although "[t]ransfer should be the usual course rather than dismissal," under § 1406, *United States v. Miller-Stauch Const. Co.,* 904 F. Supp. 1209, 1214 (D. Kan. 1995), Carlton's allegations concerning the conditions at Central State Prison are too vague to state any claim upon which relief can be granted. *See* doc. 13 at 9-10. Moreover, as explained more fully below, Carlton's allegations concerning the events at Jenkins Correctional Institution do not state any claim.  Rather than permitting him to amend claims arising from events at Central State Prison and transferring those claims, if they are sufficiently pleaded, the Court should exercise its discretion and dismiss the claims arising at Central State Prison.  To the extent that Carlton contends that transfer of the claims arising at Central State Prison is "in the interest of justice," 28 U.S.C. § 1406(a), he is free to state his contention in an objection to this Report and Recommendation, as discussed below.

were deliberately indifferent is subjective and each defendant is "judged separately and on the basis of what that person knows." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). To allege deliberate indifference, a plaintiff must show "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Youmans v. Gagnon*, 626 F.3d 557, 564 (11th Cir. 2010) (internal quotations and citation omitted).

The Court assumes, for screening purposes, that Carlton's allegations of a knee injury and ongoing pain sufficiently allege a serious medical need. *See, e.g., Nellon v. Hampton*, 2016 WL 6426382, at *3 (M.D.N.C. Oct. 31, 2016) ("Several courts have found that a torn A.C.L. is an objectively serious medical need," and collecting cases). Carlton's allegations, however, are clear that he has received care, albeit not the care he believes is required. As the Eleventh Circuit has recently explained:

> The Eighth Amendment does not require medical care to be perfect, the best obtainable, or even very good. [Cit.] Mere negligence or a mistake in judgment does not rise to the level of deliberate indifference. [Cit.] Further, a simple difference in medical opinion between the prisoner's medical staff and

>  the inmate as to the latter's diagnosis or course of treatment
>  does not support a claim for deliberate indifference.

*Gomez v. Lister*, 2022 WL 16776248, at *3 (11th Cir. Nov. 8, 2022)

(internal quotations, citations and alterations omitted). Even treatment

that amounts to medical malpractice does not violate the Eighth

Amendment. *See, e.g., Udell v. Williams*, 2022 WL 4857949, at *5 (S.D.

Ga. Oct. 3, 2022) (citing *Campbell v. Sikes*, 169 F.3d 1353, 1363-72 (11th

Cir. 1990)) ("[M]ere allegations of negligence or malpractice do not

amount to deliberate indifference."). Carlton's incredulity concerning

Gaines' diagnosis that his knee injury was healed, doc. 13 at 8-9, is

precisely the sort of disagreement with medical judgment excluded from

Eighth Amendment scrutiny. His allegations concerning refusal to order

surgery, as that refusal is based on Gaines' medical judgment, fail to

state any claim upon which relief can be granted.[3]

_____

[3] Carlton's allegations concerning the grievance procedure he used to raise his medical issues at Jenkins do not alter this analysis. His allegation that "Dr. Kevin Marler deliberately refused [him] medical care . . . ," doc. 13 at 8, is simply too vague to allege any subjective indifference. The exhibits he attaches make clear that Marler did not accept his representations concerning the prior diagnosis, *see* doc. 13-1 at 2, and provided some, albeit allegedly "inadequate care," *id.* To the extent that other, non-medical, prison officials were allegedly indifferent to Carlton's injury, his express allegation of doctors' involvement precludes any Eighth Amendment violation. *See, e.g., Moon v. Reviere*, 2021 WL 3700714, at *10 (S.D. Ga. Aug. 19, 2021) ("It is widely held that non-medical prison personnel are generally entitled to rely on the expertise of the medical staff and are not required to second-guess the medical staff's judgment

To the extent that Carlton alleges that officials were deliberately indifferent to his injury prior to his arrival at Jenkins Correctional Institution, those allegations are far too vague and conclusory to state a claim. He alleges various transfers between the date of his injury in 2016 and his arrival at Jenkins in 2019, during which he was "forced to endure the obvious destroyed A.C.L. and other knee injuries . . . caused by attacks." Doc. 13 at 7-8. However, he does not allege any fact that identifies any official who was subjectively aware of those issues. *See id.* Moreover, the statute of limitations on § 1983 claims in Georgia is two

---

regarding an inmate's care."). The grievance documents that Carlton has submitted include frequent notations indicating attention to his request from "medical staff." *See* doc. 13-1 at 2 (referring to Carlton's "allegation the inmate has already filed a grievance on this issue with medical"), 3 (stating "this grievance is being forward [sic] to Health Services for review and any action deemed appropriate"), 5 ("Based upon the inmate allegation the medical staff has already notified the inmate . . . that the request for a referral for the inmate to be seen at an orthopedic office has been sent. The medical team is waiting for the office to schedule the appointment."). The attached documents are properly considered at screening. *See, e.g., Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014) ("documents attached to a complaint or incorporated in the complaint by reference can generally be considered" in ruling on a motion to dismiss).

To the extent that Carlton alleges that some issue in the grievance process itself is actionable, *see* doc. 13 at 8 (referring to Marler's "attempt[ ] to suppress" the filed grievance), he is incorrect. Non-compliance with internal grievance procedures is not actionable under § 1983. *See, e.g., Baker v. Rexroad*, 159 F. App'x 61, 62 (11th Cir. 2005); *see also, e.g., Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state.").

years. *See, e.g., Nance v. Comm'r, Ga. Dept. of Corrs.*, 59 F.4th 1149, 1153 (11th Cir. 2023). It is unclear, therefore, how any claim arising prior to 2019 would not be time barred.

To the extent that Carlton alleges that Jenkins staff's failure to accommodate his bottom-bunk profile amounted to deliberate indifference to his serious medical needs, *see* doc. 13 at 8, he is mistaken. The Eleventh Circuit has recently affirmed that failure to accommodate a "bottom bunk" profile does not violate the Eighth Amendment, even when that "profile" has been prescribed by medical staff at a previous facility. *See Smith v. Wood*, 2021 WL 4452526, at *4 (11th Cir. Sept. 29, 2021). It has also expressly held that "failure to order a bottom-bunk pass . . . [does] not rise above the level of mere negligence . . . ." *Faulkner v. Monroe Cnty. Sheriff's Dep't*, 523 F. App'x 696, 700 (11th Cir. 2013). As this Court has recently explained, "case law indicates a failure to honor a bunk profile does not amount to deliberate indifference." *Timmons v. Martin*, 2021 WL 1603614, at *6 (S.D. Ga. Mar. 5, 2021) (collecting cases). His allegations concerning failure to accommodate his bottom-bunk profile fail to state a claim.

Finally, Carlton names "Core Civic," the private entity he alleges oversees Jenkins Correctional Institution. *See* doc. 13 at 2-3. The only factual allegation implicating Core Civic, however, is that "Dr. Gaines [and] his clinics are a connected contracted entity to the Core Civil for profit prison system. (In other words—Dr. Gains gets paid to deny medical care to prisoners so he can line his own pockets.)" *Id.* at 9. That allegation suggests that Carlton alleges that Core Civic is liable for the individual defendant's alleged deliberate indifference to his medical needs. Although private entities running prisons can be subject to suit under § 1983, *see Farrow v. West*, 320 F.3d 1235, 1239 n. 3 (11th Cir. 2003), they cannot be liable under *respondeat superior* or other theories of vicarious liability, *Harvey v. Harvey*, 949 F.2d 1127, 1129-30 (11th Cir. 1992). They may be liable for actions pursuant to official policies or customs that violate inmates' constitutional rights. *See Bucker v. Toro*, 116 F.3d 450, 453 (11th Cir. 1997) ("[T]he *Monell*[ *v. Department of Social Services of New York*, 436 U.S. 658 (1978)] policy or custom requirement applies in suits against private entities performing functions traditionally within the exclusive prerogative of the state, such as the provision of medical care to inmates."). Carlton does not allege any

11

official policy or custom. *See generally* doc. 13. Even if he did, however, the fact that the underlying conduct does not allege a constitutional violation, as discussed above, is fatal to any *Monell* claim he might assert. *See, e.g., City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury . . . the fact that the department regulations might have *authorized* [the constitutional violation] is quite beside the point."); *Baker v. City of Madison, Ala.*, ___ F. 4th ___, 2023 WL 3220975, at *10 (11th Cir. May 3, 2023) ("Here, because there was no underlying constitutional violation, [plaintiff's] [*Monell*] claim . . . fails as a matter of law." (citations omitted)).

## IV.   Retaliation Claims

In addition to allegations concerning his medical care, Carlton also alleges that he was retaliated against for stating his intent to file, and then filing, this lawsuit. Carlton first alleges that Defendant Adams, the warden of Jenkins Correctional Facility, threatened to place him in "segregation if [Carlton] 'threatened' his staff with a lawsuit." Doc. 13 at 9. After he filed this action, "Warden Adams, with permission of

Commissioner Tyron Oliver, transported Carlton—as retaliation—to Central State Prison." *Id.*

The First Amendment forbids prison officials from retaliating against prisoners for exercising their First Amendment rights. *Thomas v. Evans*, 880 F.2d 1235, 1241 (11th Cir. 1989). "To state a [F]irst [A]mendment claim for retaliation, a prisoner need not allege violation of a separate and distinct constitutional right." *Id.* at 1242. Rather, "[t]he gist of a retaliation claim is that a prisoner is penalized for exercising [his First Amendment rights]." *Id.* "To prevail on a retaliation claim, the inmate must establish that: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the official's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal connection between the retaliatory action . . . and the protected speech." *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011) (internal quotations and alterations omitted); *see also Smith v. Fla. Dep't of Corr.,* 713 F.3d 1059, 1063 (11th Cir. 2013) (identifying elements for a retaliation claim). Recognizing "both the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of

13

retaliation may be fabricated, [courts] examine prisoners' claims of retaliation with . . . particular care." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) (Calabresi, J.), *abrogated on other grounds by Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020); *see also, e.g., Skinner v. Sproul*, 2015 WL 196191, at *7 (M.D. Ga. Jan. 14, 2015).

Carlton's first retaliation claim against Adams fails because the threat to file a lawsuit is not protected speech. A prisoner's "mere threat to file a lawsuit against prison officials will not support a retaliation claim." *Clay v. Overmyer*, 2015 WL 630379, at *1 (W.D. Pa. Feb. 13, 2015). "[A] prisoner-plaintiff must actually file the [threatened] lawsuit to make out a prima facie claim for retaliation in the unique prison context." *Id.* (citations omitted). *But see Gibson v. Fischer*, 2014 WL 7178346, at *15-*16 (N.D.N.Y. Dec. 15, 2014) (discussing expressions of intent to file a grievance and noting "numerous cases exist for the point of law that even expressly threatening to file a grievance does not constitute protected activity," and "there are also numerous decisions in which a threat to file a grievance or lawsuit has been found to be constitutionally protected speech for purposes of a retaliation claim."). This Court has expressed skepticism that verbal, as opposed to formal,

complaints are protected speech. *See Mosier v. Ga. Dept. of Corr. Healthcare*, 2022 WL 896320, at *4 (S.D. Ga. Feb. 1, 2022) (citing, *inter alia*, *Daker v. Head*, 2019 WL 11005452, at *19 (S.D. Ga. Dec. 20, 2019) ("[V]erbal complaints by inmates, without more, are likely not constitutionally-protected speech.")).  To the extent that Carlton asserts a First Amendment retaliation claim based on Adam's threat of "segregation," therefore, his claim fails.

The filing of a lawsuit, as opposed to merely threatening to file one, is clearly protected speech. *See, e.g., Wimberly v. Hutchingson*, 2019 WL 1997489, at *3 (S.D. Ga. Mar. 27, 2019) ("Plaintiff's lawsuit . . . [is] constitutionally protected speech."); *Jinks v. Medlin*, 2015 WL 4716050, at *16 (S.D. Ga. Aug. 7, 2015) ("Plaintiff was engaging in protected speech by filing . . . lawsuits.") (citing *Redd v. Conway*, 160 F. App'x 858, 862 (11th Cir. 2005)).  Carlton's transfer also qualifies as an adverse action. *See, e.g., Smith v. Governor for Alabama*, 562 F. App'x 806, 815 (11th Cir. 2014) (citing *Bridges v. Russell*, 757 F.2d 1155, 1156-57 (11th Cir. 1985)) ("Even though a prisoner does not have a liberty interest in not being transferred to another prison, he may state a retaliation claim by alleging that he was transferred due to his filing of a grievance or lawsuit . . . .").

15

However, Carlton's wholly conclusory allegation that the motive for the transfer was "retaliation" is insufficient.[4]   *See, e.g., Hobbs v. Wheeler Corr. Facility*, 2023 WL 2757004, at *5 (S.D. Ga. Mar. 1, 2023); *Coward v. Gonzalez*, 2009 WL 2477249, at *5 (M.D. Ga. Aug. 10, 2009) ("A prisoner must allege more than his personal belief that he is the victim of retaliation."). To the extent that Carlton alleges that he was transferred in retaliation for filing this lawsuit, his claim fails.

_____

[4] The Court acknowledges Carlton's allegation that the transfer occurred shortly after he filed the Complaint. *Compare* doc. 1 at 7 (dated March 4, 2023), *with* doc. 13 at 9 (alleging plaintiff was transferred to Central State Prison "[o]n or about March 27, 2023). "Closeness in time between a prison or jail official's act and an inmate's protected activity may serve as circumstantial evidence that the official's act which is complained of was retaliatory." *Smith v. McDonough*, 2009 WL 10712654, at *5 (S.D. Fla. May 26, 2009) (collecting cases). However, Carlton does not indicate how the officials alleged to have retaliated, Adams and Commissioner Oliver, might have known about the lawsuit. *See* doc. 13 at 9. In fact, he affirmatively alleges that he took steps to conceal his filing from prison officials. *See id.* (alleging that, when he mailed his Complaint for filing, he "placed on the envelope another inmate[']s information."); *see also* doc. 1 at 9 (envelope listing "Lamarcus Johnson" in return address). Even a close temporal proximity between the protected speech and the adverse action cannot overcome Carlton's allegations that positively contradict the inference that either defendant knew about his lawsuit. *See Brown v. Zickefoose*, 2015 WL 1646820, at *3 (D.N.J. Apr. 14, 2015) ("The fact that plaintiff does not allege that . . . officials had knowledge of his protected First Amendment activity warrants a finding that he failed to allege the requisite causal connection . . ."); *see also, e.g., Ross v. Fiss*, 2023 WL 2739638, at *8 (M.D. Pa. Mar. 31, 2023) ("complaint . . . devoid of any factual allegations that [defendant] had knowledge of [p]laintiff engaging in protected activity[,] . . . has not plausibly alleged causation, the third element of a retaliation claim," and collecting cases).

## V.    Conclusion

In summary, Carlton's Amended Complaint fails to state any claim upon which relief may be granted.  Though a *pro se* prisoner is often given an opportunity to amend his complaint at least once, Carlton has amended, and "a district court need not allow [further] amendment if the amended complaint would still be subject to dismissal."  *Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015).  Carlton's claims do not appear amendable.[5]   His Amended Complaint should, therefore, be **DISMISSED**.  *See* 28 U.S.C. § 1915A(b)(1).  His claims concerning the conditions of his confinement at Central State Prison should be **DISMISSED without prejudice**.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy

---

[5] Despite the lack of any apparent basis for viable amendment, plaintiff's opportunity to object to this Report and Recommendation within fourteen days of service, *see infra.,* affords him an opportunity to resuscitate his case.  He may also submit a Second Amended Complaint during that period, if he believes it would cure the legal defects discussed above.  *See Willis v. Darden*, 2012 WL 170163, at *2 n. 3 (S.D. Ga. Jan. 19, 2012).

17

on all parties.   The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."   Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.   The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).   The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.   11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

## VI.   Filing Fee

Finally, the Court must assess Carlton's filing fee.   *See* 28 U.S.C. § 1915(b).   Plaintiff's prisoner trust fund account statement reflects $25.00 in average monthly deposits and balance.   Doc. 12 at 1.   Based upon his furnished information, he owes an initial partial filing fee of $5.00.   *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula).   His account

custodian shall set aside 20 percent of all future deposits to the account, then forward those funds to the Clerk each time the set aside amount reaches $10, until the balance of the Court's $350 filing fee has been paid in full.  In the event plaintiff is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian.  The balance due from plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order.[6]

**SO ORDERED AND REPORTED AND RECOMMENDED,** this <u>12th</u> day of May, 2023.

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[6] The Clerk is **DIRECTED** to send this Order to plaintiff's account custodian immediately, as this payment directive is nondispositive within the meaning of Fed. R. Civ. P. 72(a), so no Rule 72(b) adoption is required.  In the event plaintiff is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian.  The balance due from plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order.